

**SIGNED this 19th day of April, 2010.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 08-11023-CAG |
| | § | |
| MOHAMMAD GHARBI and, | § | CHAPTER 7 |
| FATEMEH GHARBI, | § | |
|     Debtors. | § | |

| | | |
|---|---|---|
| CENTURY 21 REAL ESTATE LLC | § | |
|     Plaintiff, | § | |
| | § | ADV. NO. 08-01099- CAG |
| v. | § | |
| | § | |
| MOHAMMAD GHARBI | § | |
|     Defendant. | § | |

### MEMORANDUM OPINION
### ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Came on to be considered the Motion for Summary Judgment filed by Plaintiff, Century 21 Real Estate, LLC ("Plainitff" or "Century 21"), on August 3, 2009.  For the reasons stated herein, the Court finds that the Motion for Summary Judgment should be granted in part and denied in part.  As such, the Court will grant the Motion for Summary Judgment as to the

violations of 15 U.S.C. §1114(1)(a), 15 U.S.C. §1125(a).  The Court will deny the Motion for Summary Judgment as to the violation of 15 U.S.C. §1125(d), damages, and dischargability.

## BACKGROUND

Beginning in 1999, the Defendant Mohammad Gharbi ("Defendant") operated a real estate business called "Capital Team" as a franchisee of Century 21 ("Plaintiff") pursuant to three Century 21 Real Estate Franchise Agreements ("Franchise Agreements").  (Iuliano Aff. 12.)  One agreement was for a franchise located at 906 Chestnut, Bastrop, Texas (the "Bastrop Franchise Agreement"); another was for a franchise located at 1600 S. Pleasant Ave., Austin, Texas (the "Austin Franchise Agreement"); and a final agreement was for a franchise located at 8108 Mesa Drive, Austin, Texas (the "Mesa Drive Franchise Agreement").  Section 11(c)(vii) of the Franchise Agreements gave the Defendant a limited right to use the Century 21 mark as long as the Franchise Agreements were fully performed. (Iuliano Aff. Exhibit A, B, and C.)  Section 17 of each of the Franchise Agreements gave Century 21 the right to terminate the License Agreements at any time.  (Iuliano Aff 16.)  Section 18(C) of the Franchise Agreements specifies that in the case of termination the Defendant must discontinue the use of all Century 21 marks. (Iuliano Aff. 17.)

In 2005, Defendant failed to pay amounts due under the Franchise Agreements. (Iuliano Aff. 21.)  A Termination Notice, dated October 28, 2005, notified the Defendant of the defaults and termination of the Defendant's rights pursuant to the Franchise Agreements.  The termination was effective as of October 26, 2005.  (Iuliano Aff 22.)

After termination of the Franchise Agreements, the Defendant listed in his bankruptcy schedules ownership of the websites www.texascentury21.com and www.century21online.com. (Iuliano Aff. 26.)  A third website, www.texasproperties.com/century21capitalteam was later

discovered. (Iuliano Aff. 27.)    Additionally, a fourth website, www.austinhomeland.com, displayed the Century 21 mark until at least July 13, 2006.  The Defendant also left a Century 21 sign outside 1600 South Pleasant Valley, Austin Texas, a piece of property listed as part of the Austin Franchise Agreement.  (Iuliano Aff. 28.)

### PARTIES' CONTENTIONS

The Plaintiff contends that there is no issue of material fact as to whether the Defendant's use of the Century 21 marks violates 15 U.S.C. §1114(1)(a), 15 U.S.C. §1125(a), and 15 U.S.C. §1125(d).    The Plaintiff requests statutory damages under §1117(d) for the violation of §1125(d)(1).    The Plaintiff also contends that the statutory damages for the violations of §1117(d) are non-dischargeable under Bankruptcy code §523(a)(6).

The Defendant contends that the websites were owned by an independent third party called Amerisale.  He contends that he had no control or ownership of the websites and that they were located in the Amerisale inactive archive. (Def's Resp. 1.)  The Defendant concedes that the sign was left up, but argues that the building was vacated in 2005.  (Def's Resp. 1.)  In his answer to the Plaintiff's complaint, the Defendant argues that he did not "use" the Century 21 mark in commerce because he was selling his own property.

The initial issue in this case is whether Defendant's continued use of the Century 21 marks is a violation of the Lanham Act.  The second issue is whether Plaintiff is entitled to actual damages under 15 U.S.C. §1117(a) for violations of §1114(1)(a) and §1125(a) and statutory damages under 15 U.S.C. §1117(d) for each violation of §1125(d)(1).  The third issue is whether or not the debt resulting from the Lanham Act violations should be discharged due to the Defendant's bankruptcy.

LEGAL ANALYSIS

Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To the extent facts are undisputed, a Court may resolve a case as a matter of law.  *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).  The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court."  *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational factfinder might, at trial, find in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.").  If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial."  *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

Lanham Act Violations

First, the Court must answer whether the Defendant committed trademark infringement in violation of §1114 and §1125(a) of the Lanham Act.  Section 1114 applies to registered marks and states, in part:

> Any person who shall, without the consent of the registrant . . . use in commerce any . . . registered mark in the connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . . shall be liable in a civil action by the registrant for the remedies herein provided.

Section 1125(a) applies to both registered and non-registered marks and states:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation or fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, or commercial activities by another person . . . shall be liable in a civil action by any person who believes he or she is or is likely to be damaged by such act.

Courts typically apply a similar analysis in evaluating violations of §1114 and §1125.

*See e.g.* ***Elvis Presley Enter., Inc. v. Capece***, 141 F.3d 188, 193 (5th Cir. 1998) (finding that for the plaintiff to prevail in its trademark infringement claim under §§1114 & 1125, "it must show that the Defendants' use of [the mark] creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the Defendant's bar").  In a recent case, the Fifth Circuit stated, "[t]o prevail on [a] trademark infringement claim, the plaintiffs must show two things.  First, they must establish ownership in a legally protectable mark, and second, they must show infringement by demonstrating a likelihood of confusion.  ***Bd. of Supervisors for La. State Univ. Agric. And Mech. College v. Smack Apparel Co.***, 550 F.3d 465 (5th Cir. 2008).  If the mark in question is federally registered, has been used in commerce for at least 5 years since registration, and is still using the mark in commerce, the right of the plaintiff to use the

mark becomes incontestable.  15 U.S.C. §1065; *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency. Inc.,* 214 F.3d 432, 438 (3d Cir. 2000).  In the Fifth Circuit, the Court has stated that "[o]wnership of trademarks is established by use, not be registration."  *Bd. of Supervisors*, 550 F.3d at 475.

Once ownership has been established, the Court can consider the following non-exclusive list of factors in finding a likelihood of confusion including:  the type of mark, the similarity of products, the identity of the outlets and purchasers, the identity of the advertising media sued, the defendant's intent, and any evidence of actual confusion.  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir, 2000).  "No signal fact is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors."  *Bd. of Supervisors*, 550 F.3d at 478.  "While likelihood of confusion is typically a question of fact, summary judgment is proper if the record compels the conclusion that the movant is entitled to judgment as a matter of law."  *Xtreme Lashes, LLC. v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).

Here, it is undisputed that the Century 21 mark is federally registered and has been in use continually for over five years; thus the Plaintiff's right to use the mark has become incontestable.  (Pl's Mot. Point 1 ¶A; Def. Answer ¶6.)  Additionally, it is undisputed that Century 21 has used its mark in commerce for many years.  (Pl's Comp. ¶6-9, Def. Answer ¶6-9.)  Therefore, the only issues that remain are whether the Defendant's use of the mark was commercial and whether the use was likely to cause confusion.

In his answer to the complaint, the Defendant argues that his use of the Century 21 mark was not used in commerce because he only used the websites to sell his own property.  The Court finds this argument unpersuasive.  To begin, whether or not the Debtor was only selling

6

his own property does not make the Defendant's use of the Century 21 mark non-commercial. Additionally, the front pages of the Defendant's webpages offer real estate services to the general public.  For example, www.texasproperties.com/century21capitalteam states on the front page, "We can move you around the block or around the globe.  Let us start this journey together!  Have a look at Austin Central Texas' largest inventory of homes or our Century 21 Capital Team Builder Connections extensive inventory of Visual Tours of new homes by your local builder's effort."  The websites offer links to homes for sale and relocation services.  The evidence demonstrates that the use of the Century 21 mark was in connection with an offer of real estate services, a commercial enterprise.  Thus, the only remaining issue is whether the Defendant's use was likely to cause confusion.

In this case, the evidence establishes that the Defendant had three websites that continued to display the Century 21 marks after the franchise agreement termination date, October 26, 2005.  Specifically, from October 26, 2005, until January 17, 2008, the website www.century21austin.com continued to include the Century 21 mark in the domain name. (Cerra Declaration Exhibit A.)  The Defendant at some time removed the Century 21 mark from the front page of the website, but the Century 21 mark remained in the domain name.  (Cerra Aff. Exhibit A-7.)   From the termination date until December 13, 2006, the website www.texasproperties.com/century21capitalteam included the Century 21 mark in the domain name.  (Cerra Declaration Exhibit B.)  From the termination date until December 5, 2006, the website www.texascentury21.com included Century 21 mark in the domain name. (Cerra Declaration Exhibit D.)   From the termination date until July 13, 2006, the website www.austinhomeandland.com displayed the Century 21 mark prominently on its front page. (Cerra Declaration Exhibit C.)

At first glance, it appears that there is a high likelihood of confusion in this case because a consumer who searched for an Austin real estate broker would likely assume the Defendant's webpages are connected to Century 21.  Simply stated, selling real estate from a website with a domain name that includes Century 21 or that displays the Century 21 mark on its front page would cause a consumer to assume the agent is someone connected to Century 21. *See generally* ***Marathon Mfg. Co. v. Enerlite Prod. Corp.***, 767 F.2d 214, 220 (5th Cir. 1985) (holding that in the case of identical names it is nearly impossible for there not to be confusion).  As the Century 21 mark is well known, a consumer might rely on that belief and decide to purchase a home from the Defendant instead of an authorized, Century 21 franchise.  If unsatisfied with the service performed by the Defendant, the consumer would then have a negative association with Century 21.  Below is an analysis specifically applying the likelihood of confusion factors to the evidence in this case.

I.   <u>Type of the Mark</u>

The first factor in the likelihood of confusion analysis generally applies to the strength of the senior mark.  This factor reflects the fact that the stronger, or more recognizable, a mark is, the more likely it is that a consumer will be confused as to the ownership of the mark when an unauthorized person uses the mark in commerce.  In this case, several courts have previously deemed the Century 21 mark "strong."  *See **Century 21 Real Estate Corp. v. Sandlin***, 846 F.2d 1175, 1118 (9th Cir. 1988).  Additionally, the Defendant has admitted that Century 21 has "invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade name and service marks to cause consumers throughout the United States to recognize the Century 21 marks as distinctly designating C21 residential real estate services as originating with C21."  (Pl's Comp. ¶10, Def. Answer ¶10.)  Thus, the Court

concludes that the evidence demonstrates that the Century 21 mark is strong and this factor leans in favor or finding a likelihood of confusion due to the Defendant's use of the Plaintiff's mark.

II.    Mark Similarity

This factor also leans in favor of finding a likelihood of confusion because the Defendant used a mark that is identical to the Century 21 mark on several of his websites. (Cerra Declaration at Exhibits A-D).

III.    Product/Service Similarity

Generally, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229 (citing *Exxon Corp v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)).  Century 21 itself does not own or operate any real estate offices.  Instead, it operates a real estate brokerage franchise system that allows franchisees to use its trade names and service marks and offers general support to real estate brokerage offices.  Although Century 21 and the Defendant do not offer identical services, both entities operate in the real estate business.  A consumer who encounters the Century 21 mark on a website would reasonably assume that the website is owned or operated by an agent affiliated with Century 21.  Thus, this factor also suggests a likelihood of confusion.

IV.    Outlet and Purchaser Identity & Advertising Media

The Court finds factors four and five also weigh in favor of finding a likelihood of confusion.  The Defendant's websites display the Century 21 mark in a way that suggests an affiliation with Century 21.  Other real estate agents in the Austin area display the Century 21 mark in a similar manner.  *See e.g.* http://www.century21ripley.com/index.php.  In the case of both the Defendant's websites and a Century 21 affiliated real estate agents' websites, the consumer is someone looking to purchase real estate.  By comparing both the Defendant's

websites and an affiliated agent's website, a consumer would not be able to determine that one agent is affiliated with Century 21 and that the other is not. A consumer would likely assume that both agents displaying the Century 21 mark are associated with Century 21. Similarly, both the Defendant and other authorized agents use the internet to advertise their services; thus anyone searching for real estate in Austin could encounter the webpages and be unable to distinguish between a Century 21 affiliated agent and the Defendant. Thus, these factors also lean towards a finding of likelihood of confusion.

V.      Defendant's Intent

There is no evidence in the record that the Defendant intended to confuse consumers as to the relationship between Century 21 and Capital Team. On one hand, the Defendant failed to remove the Century 21 mark from his websites and shut down the domain names that used the mark. On the other hand, the Defendant did attempt to remove the mark, albeit belatedly, from the webpages themselves. Thus, this factor does not lean toward or against a finding of likelihood of confusion.

VI.     Actual Confusion

There is similarly no evidence of actual confusion in the record. Thus, this factor does not lean toward or against a finding of likelihood of confusion.

VII.    Care Exercised by Potential Purchases

The final factor recognizes that consumers will typically use more care when purchasing an expensive service or item than when purchasing an inexpensive service or item. Although the purchase of real estate is often the most expensive purchase consumers make, it is unlikely that the consumer will closely inspect the relationship between a real estate agent and Century 21.

Thus, after applying the factors enumerated by the Fifth Circuit, the Court finds that the Plaintiff is entitled to summary judgment on the issue of whether the Defendant's use of the Century 21 mark violated the Lanham Act by causing a likelihood of confusion.

In response to the Motion for Summary Judgment, the Defendant alleges that the termination date actually occurred in January 2005 because the Defendant's attorney was still negotiating with Century 21. Even assuming the Defendant's contention is true, the later termination date does not cure the Lanham Act violations as each website was used well beyond January 2005. The Defendant also claims the websites were not owned by him but by a third party called Amerisale. The Defendant's argument is not credible as he claimed ownership of two of the websites on his bankruptcy schedules (Schedule B, *In re Gharbi*, No. 08-11023 (docket #23)). The Defendant provided no evidence to support his new contention that Amerisale owns the websites. Thus, the Court finds that the Defendant owned and controlled the websites and that his use of the Century 21 mark was likely to cause confusion and violated the Lanham Act.

The Plaintiff also alleges that a Century 21 sign remained outside of the 1600 South Pleasant Valley location owned by the Defendant. The Defendant does not contest that the sign was still there, but argues that he vacated the building in 2005. The Plaintiff, however, makes no claim as to any specific Lanham Act violation regarding the sign and makes no claim for damages based on any such violation. Therefore, the fact is noted but has no bearing on any consideration of the Lanham Act violations.

Anticybersquatting Consumer Protection Act

Next, the Court must consider whether the Defendant violated 15 USC §1125(d), the Anticybersquatting Consumer Protection Act ("ACAP"). Although the main purpose of the act

is to prevent someone from purchasing domain names that are similar to another's trademark with the intent of selling the domain name to the trademark's rightful owner, someone can also violate the statute by "diverting consumers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owners." ***Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research***, 527 F.3d 1045, 1058 (10th Cir. 2008).

Specifically, the ACAP provides that a person is liable if a "person (i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that . . . is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or is a trademark, word or name protected by reason of section 706 of Title 18 or section 220506 of Title 36." As stated above, the Century 21 mark was famous at the time the Defendant's domain names were registered. Thus, the issue is whether the Defendant acted with a bad faith intent to profit. The statute contains a nonexclusive list of factors a court should consider when determining whether there is bad faith. 15 U.S.C. §1125(d)(1)(B)(i). These factors include:

(I)      the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)     the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)    the person's prior use, if any of the domain name in connection with the bona fide offering of any goods or services;

(IV)    the persons bona fide noncommercial or fair use of the mark in a site accusable under the domain name

(V)     the persons' intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of

confusion as to the source, sponsorship, affiliation or endorsement of the site

(VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)    the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct

(VIII)    the person's registration or acquisition of multiple domain names which the persons knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)    the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

Section 1125(d)(B)(ii) contains a safe harbor provision by providing that "[b]ad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."

Here, it is undisputed that the Defendant had the right to use the Century 21 mark in his company's domain names prior to the termination of the franchise agreements. Once the Defendant received the Termination Notice, however, he was on notice that he no longer had lawful or fair use of the Century 21 mark. Therefore, the "safe harbor" provision is inapplicable in this case. Thus, the Court must decide whether there is no issue of material fact as to the Defendant's bad faith intent to profit.

The evidence in this case does not positively establish that the Defendant used the Century 21 mark in his businesses' domain names with the specific intent to profit. Although the evidence could suggest that the Defendant did not change the domain names because he wanted divert consumers from authorized Century 21 realtors to his website, it is also possible that the Defendant was simply slow to act in removing the mark and shutting down the businesses' websites. Applying the "bad faith" factors under §1125(d) is inconclusive. Many of the factors are simply inapplicable under the circumstances of this case. For example, factor numbers VI, VII, and VIII only apply to the traditional type of violation where someone registers a domain name with the intent to profit from a lawful trademark owner. Although the Plaintiff believes that VIII is applicable in this case, at the time the Defendant registered the domain names he had the right to use the Century 21 mark and used the mark specifically because of its association with the Plaintiff's services, real estate brokering. Factor number VIII only applies when someone registers multiple domain names "without regard to the goods or services of the parties." Therefore, the Court cannot grant the Plaintiff's Motion for Summary Judgment in regard to its claim under §1125(d) because there is insufficient evidence to establish Plaintiff's right to judgment as a matter of law.

<u>Damages</u>

At this time, Century 21 is entitled to actual damages under 15 U.S.C. §1117(a) for the violations of §1114(1)(a) and §1125(a). Recovery under §1117(a) is limited to Defendant's profits, any damages sustained by the plaintiff, and the costs of the action. In its Motion for Summary Judgment, Century 21 does not argue for damages under §1117(a) nor give proof of any actual damages caused by the Defendant's violations. Instead, the Plaintiff requests only statutory damages under §1117(d), a provision that only applies to violations under §1125(d), the

Anticybersquatting Consumer Protection Act. Specifically, §1117(d) states, "In a case involving §1125(d)(1) of this title, the plaintiff may elect . . . to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just."

The Court has denied summary judgment on the Plaintiff's claim of violations under §1125(d); therefore, the Court cannot grant the Plaintiff summary judgment of statutory damages under §1117(d) at this time. Additionally, Century 21 is not entitled to summary judgment on the issue of damages for the Defendant's violations of §1114(1)(a) and §1125(a) because it has not requested summary judgment of damages under those sections, nor provided evidence of actual damages.

Dischargeablility

The Court does not reach the issue of dischargability because the Court has no evidence of damages caused by the Defendant's violations of §1114(1)(a) and §1125(a) and because the Court has denied summary judgment on the Defendant's alleged violations of §1125(d). If the Plaintiff is able to prove it is entitled to damages, the Court will then determine whether those damages can be deemed non-dischargable.

The Court notes, however, that the debt will only be deemed non-dischargable if the Plaintiff can demonstrate a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). The Court disagrees with the Plaintiff's contention that a finding of bad faith under §1125(d) demonstrates a "willful and malicious injury" for the purposes of §523(a)(6). For the act to be willful and malicious "a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003) (*citing In re Miller*, 156 F.3d 598, 603 (5th Cir.

1998)).  In other words, the debtor must have intended the actual injury to result from his actions.  ***In re Delaney***, 97 F.3d 800, 802 (5th Cir. 1996).  Whether the acts were substantially certain to cause injury is based on "whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury."  ***In re Powers***, 421 B.R. 326 (Bankr. W.D.Tex. 2009) (emphasis in original).  This is a high standard.

### CONCLUSION

Based on the foregoing, the Court holds that the Plaintiff's Motion for Summary Judgment should be granted as to violation of 15 U.S.C. §1114 and §1125(a).  The Court finds that the Motion should be denied as to the alleged violations of §1125(d), the dischargability issue, and damages.

# # #
